IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA          :
                                  :
   v.                             :     Criminal No. DKC 06-0003
                                  :
KARIM MOWATT                      :
                                  :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case is Defendant Karim Mowatt's motion for return of property. (ECF No. 59). He requests the return of "[a]ll papers, books and other tangible objects", "[v]ideo tapes (VCR and Mini-DV)", "[a]ll pictures and photos", "[a]ll credit cards and bank statements", "3 Passports (American)", "[d]river'[s] [l]icense, Social Security Card and Birth Certificate", and "$20,036 U.S. Currency" seized on November 17, 2005 by the Bladensburg Police Department ("BPD").[1]

The government filed a response in opposition to the motion on May 12, 2010 (ECF No. 64) asserting that Mowatt is not entitled to the return of $20,796 which was administratively forfeited in 2006, nor to the requested passports. However, he

---

[1] The government's record shows that the BPD seized $20,796 in cash from Mowatt. (ECF No. 64-1 at 1). The court will use this amount instead of the amount that Mowatt cites.

is entitled to the return of the remainder of his property requests. Mowatt has not filed a reply. The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the following reasons, the motion for return of property will be granted in part and denied in part.[2]

I. **Background**

In November 2005, the Bladensburg Police Department (BPD) responded to a noise complaint in Karim Mowatt's ("Mowatt") apartment. As Mowatt opened his door, the BPD requested that he reveal his right hand hidden behind his back. When Mowatt refused, an officer reached for his hand. In response to Mowatt's resistance, the officers handcuffed him.

After Mowatt was placed in the living room, he began to wrestle with one of the officers. The officer and Defendant slammed into Mowatt's refrigerator which forced the refrigerator door open. Another officer noticed a plastic bag containing ecstasy pills in the refrigerator. The officers called their supervisor at the BPD to obtain a search warrant. Upon

---

[2] Mowatt's attorney, Nikki Lotze, has also filed a motion to withdraw as attorney stating that Mowatt had an agreement "that the representation was for trial only and did not include representation on any post conviction matter." (ECF No. 61). Mowatt has not objected to the motion to withdraw and has filed the motion for return of property *pro se*. Therefore, the motion to withdraw will also be granted.

obtaining the search warrant, the officers seized some of Mowatt's property including more than $20,000 in currency and two passports. The BPD turned the seized property over to the Drug Enforcement Agency (DEA).

On August 17, 2006, Mowatt was sentenced to 197 months imprisonment for four counts of narcotic trafficking and weapon related charges. The United States Court of Appeals for the Fourth Circuit reversed this court's ruling that the BPD had not illegally seized property from Defendant's apartment on January 25, 2008. (ECF No. 55). The mandate was issued on February 25, 2008 (ECF No. 56). *United States v. Mowatt*, 513 F.3d 395, 405 (4th Cir. 2008). The government then moved to dismiss the indictment which was granted the same date.[3] (ECF No. 57). Mowatt filed the instant motion for return of property on December 4, 2009. (ECF No. 59).

## II. Motion for Return of Property

Mowatt argues that the BPD searched and seized property from his apartment "without a legally signed search warrant"

---

[3] Pursuant to the Bureau of Prison's records, Mowatt was released from federal custody on July 20, 2011.

under the Federal Rules of Criminal Procedure 41(e). (ECF No. 59 at 1).[4]

Rule 41(g) of the Federal Rules of Criminal Procedure states that

> [a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion.

Fed.R.Crim.P.41(g). "[A] party who claims that the government must return seized property . . . must demonstrate lawful entitlement to the property and an equitable right to its return." *Babb v. U.S. Drug Enforcement Agency*, 146 F.App'x. 614, 620 (4th Cir. 2005)(internal quotations omitted)("[u]sually, this showing is minimal, as 'the person from whom the property was seized is presumed to have a right to its return'")(citing *United States v. Chambers*, 192 F.3d 374, 377 (3d 1999). The party may support this burden by showing that the government no longer has a need for the property. *See United States v. Garcia*, 65 F.3d 17, 20 (4th Cir. 1995). The burden then shifts to the government to show that it has a legitimate interest in keeping the property. *Id.; see also United States v. Carter*,

---

[4] Mowatt has mistakenly cited Fed.R.Crim.P. 41(e) here. Rather, a motion for return of property falls under 41(g).

139 F.3d 424, 429 (4th Cir. 1998)(legitimate interest can included items seized for continued use in investigations).

If the government does not have a legitimate reason for retaining the property, "individuals whose property interests are at stake are entitled to notice" of the property and the opportunity to reclaim it. *Dusenberry v. United States*, 534 U.S. 161, 167 (2002)(internal quotations omitted)(citing *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993)). The government must show that notice was given to reclaim the property. *Dusenberry*, 534 U.S. at 168. Notice is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 168 (quoting *Mullane v. Cent. Bank & Trust Co.*, 339 U.S. 306, 309-10 (1950)).

Pursuant to 19 U.S.C. § 1607, the government may provide notice of forfeiture of property worth less than $500,000. *United States v. Minor*, 228 F.3d 352, 354 (4th Cir. 2000)(stating that forfeitures under customs laws apply to forfeitures under drug laws in accordance with 21 U.S.C. § 881(d)). The government "must publish notice of its intention to declare forfeiture of the seized property and must provide written notice to interested parties." *Minor*, 228 F.3d at 354 (citing

19 U.S.C. § 1607). This includes a notice "to be published for at least three successive weeks." *See* 19 U.S.C. § 1607(a).

The government must also provide "reasonable notice" to federal prisoners. *Burman v. United States*, 472 F.Supp.2d 665, 667 (D.Md. 2007). But "the government should not be required to prove that the prisoner in the particular case actually received notice." *Minor*, 288 F.3d at 358 (the government's efforts to notify prisoners only requires a "context-specific inquiry"). The government must, however,

> "sen[d] a certified letter, return receipt requested, to the facility [at which] the prisoner [is] housed; [show that] a prison official signed for the letter, and the government introduced evidence that mail delivery procedures existed at th[e] facility that were reasonably calculated to ensure that the notice, once addressed to [the inmate], would still reach him upon arrival at the prison.

*Minor*, 228 F.3d at 358(internal quotations omitted); *see also Dusenberry*, 534 U.S. at 172 ("[T]he use of the mail addressed to [the] petitioner at the penitentiary [is] clearly acceptable. . . . [s]hort of allowing the prisoner to go to the post office himself, the remaining portion of the delivery would necessarily depend on a system in effect within the prison itself relying on prison staff")(quoting *Mullane*, 339 U.S. at 314). If the government does not receive a response within 20 days of first publication of notice, it may declare that the prisoner has

6

administratively forfeited the property. *See* 19 U.S.C. § 1609; *see also Minor*, 228 F.3d at 359 ("[a]dministrative forfeits empower the government to take ownership of property without judicial proceeding").

The government argues that Mowatt has forfeited his right to reclaim the currency and, thus, is not entitled the return of the money. (ECF No. 64 at 4). The government provides evidence showing that it published a notice in *The Wall Street Journal* beginning on January 23, 2006. (ECF No. 64-1 at 1). The claim deadline date to respond to this notice was March 9, 2006. (*Id.*) The time elapsed between these two dates is clearly more than three successive weeks. Thus, the government's published notice to Mowatt was sufficient to meet the requirement under 19 U.S.C. § 1607. *See e.g., Tillman v. United States*, Civ. No. AW-08-3362, 2009 WL 2151201, at *1 (D.Md. July 14, 2009)("public[ation] for three successive weeks in *The Wall Street Journal* on May 15, 22, and 30, 2000" was sufficient notice); *Hamilton v. United States*, Civ. No. L-06-991, 2007 WL 5063805, at *1 (D.Md. May 29, 2007)("[n]otice was also published in [*The*] *Wall Street Journal* on March 27, April 3, and April 10, 2000").

The government also sent notice through certified mail to Defendant at the Prince George's County Correctional Center on

January 10, 2006. (ECF No. 64-1 at 1).[5] The "Status Inquiry Document" indicates that Mowatt received a return receipt from the Correctional Center on January 13, 2006 and set a claim deadline for February 14, 2006. (*Id.*) The words "Notification Completed" appear directly under the notification status for the certified mail. (*Id.*). Therefore, Plaintiff's records show that it notified Defendant through certified mail as set forth in *Minor*.

In conclusion, the government has met the notice requirements under 19 U.S.C. § 1607 and the additional steps to ensure notice to a prisoner stated in *Minor*. Mowatt did not respond to either the notice in *The Wall Street Journal* or the notice through certified mail and, thus, has forfeited his right to the return of the $20,796 in currency.[6]

---

[5] Although Mowatt is currently released, he was incarcerated at Prince George's County Correctional Center at the time the government sent a notice through certified mail. (ECF No. 59 at 1).

[6] Mowatt argues that the forfeiture notice he received "placed [him] into a conflicting position by the government" because "he would[']ve been pleading guilty to possession of some of the recovered contraband." (ECF No. 59 at 2). Mowatt's argument that he would have incriminated himself under the Fifth Amendment to protect his property rights has no bearing on the Government's obligation to meet the notice requirement prior to property forfeiture in this case. Mowatt could have provided other evidence (i.e., witnesses or testimony) to show ownership of his property without testifying because the Self-Incriminating Clause of the Fifth Amendment "protects a person

### A. Return of Three American Passports

As noted previously, a prisoner requesting the return of property from the government has the burden of showing that he is entitled to that property and has an interest in it. "[A] prisoner has protectable . . . property interests in items of personal property he legitimately possesses." *O'Connor v. Keller*, 510 F.Supp. 1359, 1368 (D.Md. 1981). If the government does not "have a need to use [the property for] evidence, it should be returned" unless the government needs "to protect its legitimate law enforcement interests in the property despite its return." *Garcia*, 65 F.3d at 20.

Although Mowatt requested the return of three passports, the government submitted a declaration from Captain Charles L. Owens, Custodian of Records for the BPD, listing only two passports in the BPD inventory. (ECF No. 64 at 6-7). The BPD inventory does not account for a third passport.

The government asserts that Mowatt has not met his burden by showing property interests in the two passports. The assertion is correct. One passport is issued to the name of

---

only against being incriminated by his own compelled testimonial communications." *See Doe v. U.S.*, 487 U.S. 201, 206 (1988) ("[T]he Constitution necessarily does not proscribe incriminating statements elicited from another") (internal quotations omitted) (citing *Couch v. United States*, 409 U.S. 322, 328 (1973)).

9

Kobi Lumumba Mowatt which is not identical to Defendant's name (ECF No. 64 at 7). Mowatt has not responded to the government's claim with additional evidence to demonstrate a property interest in this passport. Therefore, Mowatt is not entitled to the return of the passport issued to Kobi Lumumba Mowatt.

The government states that the other passport, issued to Karim Lumumba Mowatt, was cancelled on August 23, 2005 and, thus, cannot be returned to Mowatt. (ECF No. 64 at 7; 64-4 at 2). Here, the government's argument is also correct. "As a travel control document, [Mowatt's] passport is both proof of identity and proof of allegiance to the United States." *See Haig v. Agee*, 453 U.S. 280, 293 (1981). As such, when Mowatt's passport was cancelled, he no longer had any property interest in the passport where "[n]o property interest is implicated because United States passports are not the property of the individuals to whom they are issued." *See Atem v. Ashcroft*, 312 F.Supp.2d 792, 802 n. 16 (E.D.Va. 2004); 22 C.F.R. § 51.7(a)("[a] passport at all times remains the property of the United States and must be returned to the U.S. Government upon demand"). Therefore, Mowatt is not entitled to the return of this passport either. *See e.g., United States v. Banks*, 372 F.App'x. 237, 241 (3$^d$ Cir. January 29, 2010) (affirming district

court ruling that Petitioner was not entitled to return of his passport under Fed.R.Crim.P. 41(g)).

    B.  **Return of Remaining Requested Items**

Aside from the $20,796 and "3 Passports (American)", Mowatt has requested the return of 1) "[a]ll papers, books, and other tangible objects;"[7] 2) "[v]ideo tapes (VCR and Mini-DV);" 3) "[a]ll pictures and photos;" 4) "[a]ll credit cards and bank statements;" and 5) "[d]river['s] [l]icense, Social Security Card and birth certificate." (ECF No. 59). The government does not dispute that Mowatt is entitled to the return of the items listed in the BPD inventory. (ECF No. 64 at 8; 64-4 at 2).

## II. Conclusion

For the foregoing reasons, Mowatt's motion for return of property will be granted in part and denied in part. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

---

[7] It is unclear what Mowatt means by "tangible objects" and he does not provide further clarification. The items that Mowatt has requested must exclude any contraband removed from his residence. *See Serio v. Balt. County*, 115 F.Supp.2d 509, 517 (D.Md. 2000)(seized property, except contraband, can be returned after a criminal proceeding).

11